Erhart v. Dietrich.

ERHART, *Administrator*, v. DIETRICH, *Appellant.*

Division Two, December 7, 1893.

1. **Presumption:** DEBTOR: POSSESSION OF OBLIGATION. Ordinarily a presumption of payment arises from the fact of possession by a debtor of the obligation executed to his creditor.

2. ———: ———: ———. Where it appears, however, that the debtor had the opportunity of obtaining possession or canceling the obligation otherwise than by its payment, the presumption does not arise.

3. **Parent and Child:** PRESUMPTION OF PAYMEMT: POSSESSION OF NOTE. Where a son takes his aged, enfeebled and demented father to his home and cares for him there until his death, the possession by the son thereafter of a matured note and deed of trust owing by the son to his father when the latter went to live with him, raises no presumption of payment.

4. ———: NOTE: CREDITS: PRESUMPTION. Where, in an action to foreclose such deed of trust, there is no evidence that certain credits on the back of the note were in the handwriting of the deceased, it is error to instruct that all the credits are to be taken and considered as correct, and that the amounts were so paid and the burden to prove the contrary was on plaintiff.

5. ———: ———: ———: ———. The son in such case is not entitled to any credit on the notes until he shows the absolute fairness of the transaction and that his father fully understood what was done.

6. ———: ———: PRESUMPTION. Where, in such action, there is evidence that the deceased gave his son a note after he went to his house, it is error to instruct that if deceased executed said note the law presumes the son was not indebted to his father and the burden is on the plaintiff to prove such indebtedness.

7. **Practice:** PRESUMPTION: JURY. Where the presumption is one of fact, the inferences are to be drawn therefrom by the jury.

8. **Parent**: SERVICES OF SON: PRESUMPTION. A son cannot recover for taking care of his aged and infirm father, unless he shows a state of facts which overcomes the natural presumption that he did not intend to charge for such services.

*Appeal from Scotland Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*E. Scofield* and *McKee & Jayne* for appellant.

(1) The court erred in setting aside the verdict of the jury and granting respondent a new trial; for instructions numbered 1, 2 and 3, given on motion of appellant, properly declared the law under the pleadings and evidence in this cause. (2) Instruction numbered 1, given on motion of defendant, correctly declared the the law; possession of a promissory note, by maker, after due, is presumptive evidence of payment. *Lawson v. Gudgel*, 45 Mo. 480; *Hill v. Gayle*, 1 Ala. 275; *Smith v. Harper*, 5 Cal. 329; 1 Greenleaf on Evidence [12 Ed.], sec. 38, p. 43; 19 Pickering (Mass.), 221 to 227; *Boring v. Clark*, 15 Atlantic Reporter, 853; Abbott's Trial Evidence, pp. 809 and 816; Lawson on Presumptive Evidence, pp. 344, 347, 348, 349, and 350. (3) Instruction numbered 2, given on motion of defendant, correctly declared the law: Note produced in evidence with the name of payor cut therefrom, raises presumption that same had been paid. Abbott's Trial Evidence, p. 408, sec. 35; *Grey v. Grey*, 47 N. Y. 552. Instruction numbered 3, given on motion of appellant, correctly declares the law. All credits appearing on note, given in evidence, should be taken and considered as correct until overcome by evidence. 1 Greenleaf on Evidence, secs. 121, 712; *Carter v. Carter*, 44 Mo. 195; *Smith v. Terry*, 69 Mo. 142; *Ham v. Barret*, 28 Mo. 288; Lawson on Presumptive Evidence [1 Ed.], 353.

Though instructions numbered 1, 2 and 3, given on motion of defendant, had been excluded from the jury, the same declarations of law they contained would have yet been to the jury, in the remaining instructions given in the cause. (4) The jury, being the sole judges of the credibility of the witnesses and the weight of the evidence, have said by their verdict in this cause that appellant did not obtain the possession of the note and mortgage in controversy fraudulently.

*John D. Smoot* and *Mudd & Wagner* for respondents.

(1) There is no presumption of payment arising under the circumstances presented in this cause. Lawson on Presumptive Evidence, p. 355, rule 76; *Grey v. Grey*, 47 N. Y. 552; *Kenny v. Public Administrator*, 2 Bradf. 319. (2) The presumption does not arise where the debtor had the means of obtaining possession of or of canceling the obligation otherwise than by payment. See authorities cited above. (3) The court erred in instructing the jury that the credits on the notes were presumed to be true.

GANTT, P. J.—This is an action by the administrator of John Dietrich, deceased, and Wm. Gerth, the trustee in a deed of trust given to said Dietrich by his son, August Dietrich, the defendant, to secure a certain note for $800, of date December 28, 1886, and bearing 8 per cent. interest. John Dietrich, Sr., died in the winter of 1890, at the age of 87 years. He was, as his name indicates, a German. He never acquired sufficient knowledge of the English language to speak it. He was a widower for several years prior to his death. He left surviving him four children, two sons, John and the defendant, August, and two daughters, Mrs. Long, and Mrs. Hildebrant, all married and with families.

The execution and delivery of the note and deed of trust for $800 are admitted by defendant. He pleaded payment, and surrender of the note, and a set-off, for various goods and wares furnished his father by him, and for services rendered in nursing and caring for his father, and money loaned, to the amount of $1,003, setting out the items. To which plaintiff replied, denying all the allegations of new matter, and especially denies the payment of the note, and the surrender of the note and deed of trust, but avers the facts to be that John Dietrich, Sr., the payee of said note, "at the time when defendant obtained possession of said note and trust deed, long before and ever since until his death, was old, infirm and weak, in both mind, and body, was incapable of attending to his business or transacting the ordinary affairs of life, and was wholly incompetent to make a contract, and the defendant knowing said facts fraudulently obtained possession of said note and trust deed without paying any consideration therefor, and without any consideration whatever and has ever since fraudulently held possession of said note and trust deed." Plaintiff further denies each and every item of defendant's set-off.

From the evidence, we glean that the old gentleman lived by himself, in a little house in Etna, doing his own cooking and work, when well, and, when feeble, employing Mr. Kepfer's wife to cook and wash for him. He lived alone in this manner about five years, until the summer of 1889, when his mind became diseased, and his son, the defendant, was sent for, and he took him to his house, where he lived until his death in 1890, save for a period of ten weeks, which he spent at the house of his son-in-law, Hildebrant. The testimony greatly preponderates to the effect that the old man was exceedingly feeble, both in mind and body, during the time he lived at his son's, the defendant.

All his effects, including the note and mortgage, were taken to defendant's house, and after the death of the old man the note and mortgage were found in defendant's possession with defendant's name cut off of the note. The defendant attended to his father's business after he came to his house. He paid Hildebrant for his care of him for ten weeks. He gave in his tax list including this note to the assessor.

Defendant does not claim that he was entitled to any credits on the note when his father came to him in the summer of 1889. The old gentleman had no stock of any kind and did not and could not transact any business. The note had a credit of $400 on it, purporting to have been made in 1890; this credit was not shown to have been in the old man's hand-writing or by his direction. Mr. Ladd, the county assessor, testified that the deceased gave in the $800 note for the years 1887, 1888 and 1889. In 1890, the defendant gave the note in as $300.

Defendant offered evidence to show the value of his services by the week in taking care of his father, and plaintiff offered various witnesses, most of them relatives, to prove that defendant admitted to them after his father's death, that he owed him the $800 note.

Defendant refused to pay Hildebrant $2 a week for taking care of his father in 1890 on the ground that it was an excessive charge. The administrator testified that when he went to make the inventory and asked defendant for the papers of deceased, defendant said that it was none of his business; that he would have nothing to do with it. No proof of payment other than by the services set up in the counterclaim was made by defendant, and there was no evidence that these were rendered with the expectation of reward, or that the amount was agreed upon, or any settlement had,

prior to the old man's death, or that the old gentleman needed money for any purpose, except for support.

The court gave the following instructions, at the request of plaintiff:

"1. The court instructs the jury that, in determining what weight should be given to the credit on the back of the note and to the fact that defendant is in possession of the note in suit, the jury may take into consideration the mental capacity and condition of the deceased, the fact that he lived at defendant's house and was there at the time of his death.

"2. The jury, in passing upon the question whether said note is paid or not, have a right, and it is their duty, to take into consideration all the facts and circumstances connected with the cause, given in evidence, and the jury are the sole judges of the weight of the evidence and of the credibility of the testimony.

"3. The jury, in passing upon defendant's set-off, in order to be justified in allowing him upon any item of the set-off, must be satisfied from the evidence in the cause that the same was justly due defendant at the time of the death of John Dietrich, and the burden of proof is on defendant to show such indebtedness.

"4. Although defendant is in possession of the note and the trust deed sued upon, still, the plaintiff has the right to sue and recover upon said note, unless the jury shall believe from all the evidence that plaintiff has paid off said note."

To which defendant excepted. The court refused the following:

"5. If the jury believes from the evidence in the cause that said note of $800, admitted to have been given by the defendant to John Dietrich, deceased, was unpaid, and was due to John Dietrich, deceased, at the time he left Etna and went to reside with defend-

ant, and if the jury further believe from the evidence in the cause that said John Dietrich was weak in body and mind and did not have mental capacity sufficient to make a contract; while in said condition defendant obtained possession of said note and mortgage, then said possession was wrongful and could not affect plaintiff's right to recover on said note sued upon."

To which plaintiff excepted. The court then gave the following instructions for defendant:

"1. The court instructs the jury that the possession of a promissory note by its maker after the same becomes due, is presumptive evidence of its payment. Therefore, if you believe from the evidence in the cause that the note described in the plaintiff's petition was in the possession of the defendant at the time of the bringing of this suit and after the same was due, then that is evidence that defendant has paid the same, and before the plaintiff can recover in this action he must prove by a fair preponderance of the evidence in the cause that defendant obtained the possession of said note improperly.

"2. If the jury believes from the evidence that the note sued on was produced in evidence with the name of the defendant removed and cut therefrom, this raises a presumption of payment of the same and the burden of proving same was not paid devolves upon the plaintiff, and, unless the plaintiff has proven by a preponderance of the evidence in the cause to your satisfaction that such is unpaid, you will find for the defendant.

"3. The court instructs the jury that if you believe from the evidence in the cause that the note sued on was produced in evidence, that all credits appearing thereon are to be considered and taken to be correct, and that such amounts were so paid, and it devolves on plaintiff to prove, by a preponderance of the evidence

in the cause, that such payments were not so made, to authorize you to disallow the same.

"4. The court instructs the jury that if you believe from the evidence in the cause that deceased, during his lifetime, executed to defendant his promissory note, then the law presumes that defendant was not at that time indebted to deceased, and the burden of proving such indebtedness then existed, devolves upon the plaintiff, and this he must prove to the satisfaction of the jury by a preponderance of the evidence in the cause.

"5. If the jury believes from the evidence that defendant, during the life of the deceased, paid any note or notes mentioned in his off-set, as the surety of decedent, then you will find for the defendant on his off-set for such sum or sums so paid.

"6. The court instructs the jury that if you believe from the evidence that defendant, during the lifetime of decedent, paid any of the items of account mentioned in his off-set at defendant's instance for him, then you will find for defendant on his off-set in such sum or sums you find he so paid.

"7. The jury is instructed that if you believe from the evidence in the cause that defendant boarded, cared for and washed for and nursed decedent, then you will find for defendant on his off-set in such sum as you may believe it was proven to be worth."

To the giving of which plaintiff at the time duly objected and excepted.

The court of its own motion then gave the following instruction:

"The fact that defendant is in possession of the note, raises a presumption of payment, but this presumption is not conclusive, but may be removed by evidence which shows that the note was not actually paid, and if in view of all the facts and circumstances

in evidence, the jury believe that such presumption has been removed, and further believe from the evidence that the note is still unpaid, then they will find for the plaintiff.''

To the giving of which the plaintiff, by his counsel, then and there, at the time excepted.

Under the instructions, the jury returned a verdict for the defendant, not only against the note and mortgage, but for $291.53 on his counterclaim. Plaintiff within four days filed his motion for new trial, assigning as grounds, that the verdict was against the evidence and weight of evidence; that the court improperly instructed the jury for defendant in giving instructions numbered 1, 2, 3, 4, 5, 6 and 7, and because the court refused proper instructions asked by plaintiff, numbered 6, 7, 8, 9, 10, and because the court admitted illegal evidence over objections of plaintiff and because of newly discovered evidence.

Upon the hearing of this motion, it was sustained, and a new trial was granted by the following order.

''Now at this day come the parties hereto, by their respective attorneys, and the cause coming on to be heard, on the motion of plaintiff for a new trial, the court now being of the opinion that the court erred in giving instructions numbered one (1), two (2), and three (3) for the defendant, and being of the opinion it erred in no other particular on the trial, it is therefore ordered that a new trial be granted the plaintiff herein.''

Defendant in due time filed his affidavit and bond in appeal, and an appeal, by the court, was duly granted him from its order and judgment granting plaintiff a new trial in this cause.

I. The case we have in hand emphasizes the tendency of the bar to have the courts invade the province of the jury, and draw all the conclusions from the evidence, which the jury might draw, and in addition

give these inferences the weight of the sanction of the courts.

Presumptions serve a most useful and indispensable part in the correct decision of many questions, but they are out of place, *when the facts are known, or are admitted.* "Presumption is a principle of law, by which, for the furtherance and support of right, facts not established by positive evidence are inferred from circumstances." Mathews on Presumptive Evidence, p. 1; *Lynch v. Railroad,* 112 Mo. 420.

The facts of this case in brief were these: The defendant was indebted to his father in the sum of $800, for which the father held the son's note and deed of trust. The note was executed in 1886. The father was old and infirm, and lived alone in a small cottage in the town of Etna, some miles distant from his son. In the summer of 1889, the father was found, wandering in the fields, evidently demented, so much so that he did not know his most intimate friends. The son was sent for, came, and removed his father and all his effects to the son's home. The father became blind. The son took care of his father's affairs. He gave in his tax list; paid a brother-in-law for the board of his father for ten weeks, and looked after him generally. The father died at the son's house in 1890. After his death, the administrator of the old gentleman asked the son for the papers of the estate, and he refused to turn them over. No claim was made by the son that, prior to the old man's coming to live with him, the son was entitled to any credit on the note. The old man had no debts and no occasion, so far as disclosed by either side, for contracting any, beyond providing for his simple wants for clothing, board and lodging, which this same son thought would not reasonably be worth $2 a week, when settling with his brother-in-law. All

the evidence agrees that the old gentleman was as helpless as a child, and of enfeebled intellect.

Under this state of case the circuit court gave instructions that the possession of this note by defendant after his father's death, and after it was due, was presumptive evidence.of payment, and the burden was on plaintiff to prove, by a fair preponderance of evidence that defendant wrongfully. obtained it; and devolved upon plaintiff to prove it was not paid, and unless plaintiff had so shown they must find for defendant.

There is no question that the cases are abundant and of the highest authority that ordinarily a presumption of payment may be indulged by the jury, or court from the possession by the debtor of the security, or obligation, because it accords with the ordinary course of dealing, that, when one pays his note, or bond, or other security, he usually takes it up. Ordinary prudence dictates that he retain his money until the creditor produces and delivers up the security. Lawson on Presumptive Evidence, 346—B; *Connelly v. McKean*, 64 Penn. St. 118; *Haywood v. Lewis*, 65 Ga. 224; *Lipscomb v. DeLemos*, 68 Ala. 592.

But when the debtor had the means of obtaining possession of, or of canceling, the obligation other than by paying it, then no such presumption arises. This precise question arose in New York in 1872, in *Grey v. Grey*, 47 N. Y. 552. In that case the son gave his father, on statement, his note for $425, due in one year. The father died, the note could not be found, and the son refused to pay; suit was brought. The administrator proved the execution and consideration of the note, and its loss, and rested. Defendant then produced the note with his name torn off. The referee held that the possession was by defendant presumptive evidence of payment or discharge. It appeared that

the son lived at home with his father and had a key which fitted his father's desk, where the note was kept. The court of appeals held *that the presumption of pay-ment did not obtain* in the case, saying: "But if any presumption of title or of payment prevail by mere possession, *it is only where the possession is free from suspicion.*"

And this was the rule of the civil law, for, while in a proper case, the presumption might be indulged, yet Pothier agrees with Boiseau "that if the debtor were the general agent or clerk of the creditor, *having access to his papers*, possession alone might not be a sufficient presumption of payment, or release, so, if he was a neighbor, into whose house the effects of a creditor had been removed on account of a fire."

In this case there is no pretense of a gift *causa mortis*, and the circumstances surrounding the acquisition of the possession, and the uncontradicted evidence of the father's mental weakness *amply rebut the pre-sumption of payment.* To indulge such a presumption under these circumstances would establish a dangerous. rule.

It is clear that when the alleged donee has oppor-tunities of obtaining possession wrongfully, mere pos-session does not establish *delivery* in gifts *causa mortis.* *Kenney v. Adm'r*, 2 Brad. (N. Y. Sur.), 319.    We think the circuit court erred in giving this instruction and properly granted a new trial for the error thus com-mitted.

II. Again the court instructed the jury that all the credits on the note were to be considered, and taken as correct, and that the amounts were so paid, and the burden to prove the contrary was on the plaintiff.

There was no evidence that these credits were in the handwriting of the deceased. This instruction should not have been given, without proof that the

indorsement was in the handwriting of the intestate, or at least not in the handwriting of defendant. *Carter v. Carter*, 44 Mo. 195; *Coffin v. Bucknam*, 3 Fairfield (Me.) 471.

Nor do we think defendant is entitled to the credit until he shows the absolute fairness of the transaction, and that the old man understood *fully* what he was doing, in view of the evidence showing that he was so enfeebled in mind, and almost blind, and helpless, and subject to defendant's controlling influence. *Ilgenfritz v. Ilgenfritz*, 116 Mo. 429.

III. Equally erroneous was the instruction that if the plaintiff's intestate during his lifetime executed to his son, the defendant, his promissory note, then the law presumed that defendant was not indebted to deceased, and the burden of proving an indebtedness devolved upon plaintiff. This instruction was given with reference to the note for $125, given by deceased to defendant, after going to his home. This identical instruction was condemned by the court in *Ham v. Barret* (1859), 28 Mo. 388, Judge Scott saying that: "Where a presumption is one of fact merely, the court is not warranted in declaring it to the jury as a presumption authoritively raised *by law*, but should direct them that from the evidence it is their province to determine whether they will raise the presumption or not. The jury, looking to the *bench* for the law, would naturally take it that such a declaration was binding, and left them no discretion. Where the facts are before the jury, the presumptions or inferences are questions purely for them." Best on Presumptions, 46–51; Mathews on Presumptive Evidence, pp. 398, 399; *Lynch v. Railroad*, 112 Mo. 420.

The circuit court very wisely took the first opportunity of recalling these declarations of law and granting a new trial, and its action in so doing is approved.

IV. But the court would have been authorized to grant a new trial on account of the verdict on the counterclaim. There was no evidence that defendant rendered his father the services for which he claims compensation, with the expectation of reward or in consequence of any agreement that he should be compensated, and the relationship rebuts the presumption that might otherwise obtain solely from their rendition, thus casting the burden on him to establish the agreement. As the case may be tried again, the defendant should be required to show a state of facts overcoming the natural presumption that he did not intend to charge for these kindly offices to his aged and helpless father. *Snyder v. Free,* 114 Mo. 360; *Morris v. Barnes' Adm'r* 35 Mo. 412; *Hart v. Hart's Adm'r,* 41 Mo. 441; *Guenther v. Birkicht's Adm'r,* 22 Mo. 439; *Aull Savings Bank v. Aull's Adm'r,* 80 Mo. 199.

The judgment is affirmed. All concur.