## Hollon v. Weatherford's Administrator.

(Decided April 16, 1935.)

MONTGOMERY & MONTGOMERY for appellant.

E. C. MOORE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Joel Weatherford was a great great-uncle, and his third wife was the great aunt, of John H. Hollon. There were born to Weatherford and his first wife a number of children; he had no children by his second, and third. He was a pensioner of the United States government, as such was paid $50 a month pension for a number of years, and in the latter part of his life $75 a month. He owned 81 acres of land on "Little South" in Casey county, on which he had resided many years before his death. He died in 1928. John Hollon was practically raised by Weatherford. On August 26, 1922, Weatherford and wife conveyed the 81 acres to Hollon, for the recited consideration of $2,000, evidenced by eight notes of $250 each, payable to Weatherford. The deed contains this provision:

> "Now, it is agreed and well understood by said first and second parties that this deed becomes in force and effect at Joel Weatherford's death, but second party is to do any fencing and repairing he sees fit and cultivate said land and pay first parties a reasonable share rent on same and second party is to pay all taxes on said land beginning in 1923."

After Weatherford's third marriage, those of his children who had not previously married and left home did so, leaving him, his wife, and Hollon constituting the family. Within about a month after the above deed was executed and delivered, Hollon married, and he

and his wife resided with Weatherford and wife until the latters' deaths. Shortly after the deed was made. Weatherford's wife sustained a stroke of paralysis which rendered her practically helpless during the remainder of her life. She lived after she was so afflicted six or eight months. She weighed about 200 pounds, and, on account of her weight and affliction, she required constant assistance, attention and care, which were given by Hollon and wife. Weatherford was very old and feeble. On this account he required more or less attention and care. Nevertheless, he was able to get about with the aid of walking canes and attend to his limited business. The farm contained eight or ten acres of tillable land. Hollon cultivated it, producing corn and tobacco. Weatherford's home, at the time the deed was made, was furnished and provided with the usual household and kitchen furniture; he owned and had on the premises some live stock. Weatherford deposited his pension checks in the bank on which he drew checks for such purposes as he desired, until a short time before his death, and during the latter part of his life, a number of the pension checks were cashed by Hollon. From May 27, 1920, to his death, the pension checks deposited to Weatherford's credit in the People's Bank amounted to $4,539.71, on which he had drawn checks aggregated $4,569.38, leaving an overdraft of $29.67. Of them $719.25 were payable to, and cashed by, Hollon; $83.88 thereof, before, and $635.37, after, the deed of Weatherford to Hollon. The checks drawn upon and charged to his account are now before us.

On March 12, 1933, after Hollon's deed was executed in December, 1922, Weatherford and wife executed and delivered to Frank Lane a mortgage on the 81 acres to secure the payment of $491, to which we shall hereafter advert.

Hollon having failed to pay, as it is claimed by the administrator of the estate of Weatherford, the eight $250 notes or the interest thereon, during the life of Weatherford, this action was brought to recover of him thereon.

An action was first instituted by William Weatherford, administrator of the estate of Joel Weatherford. William died. It thereafter remained on the court's

docket for more than one year during which time no order of revivor was entered as provided by sections 508 and 509, Civil Code of Practice. It was dismissed as provided by sections 510 and 511, Civil Code of Practice. Thereafter, the Marion National Bank, Lebanon, Ky., was by an order of court appointed and qualified as administrator de bonis non of the estate. On August 10, 1931, it filed this action to recover of Hollon the amount of the notes. Its petition sets forth the necessary and required allegations to constitute a cause of action on the notes and enforce the purchase-money lien on the 81 acres to satisfy the same. See Crawford v. Crawford, 222 Ky. 708, 2 S. W. (2d) 401; Bell v. Mansfield's Assignee, 13 S. W. 838, 12 Ky. Law Rep. 89; Brown v. Ready, 20 S. W. 1036, 14 Ky. Law Rep. 583.

The petition contains this statement:

"That it is unable to file said notes as they are now, and have at all times, since the death of the decedent, been in possession of the defendant who refuses to surrender same."

Upon the court overruling Hollon's demurrer to the petition, he filed an answer, setting out the substance of the pleadings in the action of William Weatherford, administrator of the estate against him, and pleaded "the failure to revive the action in twelve months in bar of further proceedings herein." The second paragraph of his answer is a traverse. In the third, he avers that on February 13, 1928, he paid Frank Lane the $491 note, with interest from March 12, 1923, which was secured by Weatherford's mortgage on the 81 acres; and charges that, by an entry on the margin of the record of the mortgage, Frank Lane thereby transferred the $491 note to him; and that in 1928, Weatherford, in consideration of his paying the Lane $491 note and interest, agreed to, and did, surrender to him the three $250 notes, maturing January 1, 1924, January 1, 1925, and January 1, 1926, and indorsed the one of them that matured January 1, 1926, "paid to release mortgage," and signed the indorsement. In the fourth paragraph, he avers that in May, 1926, "Joel Weatherford, in consideration of the services performed by the defendant, in waiting upon said Joel Weatherford and his wife until her death, and of the services to be per-

formed by the defendant in waiting upon and looking after Joel Weatherford until his death, canceled and surrendered to him the five remaining notes of $250.00 each, executed by him for said land and directed that said notes be marked 'paid.' * * * that he had performed all the services to said Joel Weatherford required of him in the settlement of said notes and is entitled to have the lien against the land released. That the stipulation in the deed with reference to rent provides that the said Weatherford was to have a share in the crop which he received from the defendant from year to year as raised.''

The answer was controverted by a reply. Thus the issues were formed.

On the evidence of the parties, the court rendered a judgment in favor of the estate on the five notes, maturing in 1927, 1928, 1929, 1930, and 1931, and interest, less credits of $112 (burial expenses), and $29.67 (decedent's overdraft), and directed the sale of the land to satisfy the debt, interest, and costs. Hollon paid by his check the Lane note $636, which appears in the record. The court decreed in Hollon's favor as to the notes maturing January 1, 1924, 1925, and 1926. Hollon is here insisting the court erred in overruling the demurrer to the petition; in sustaiing an exception to his deposition; and in awarding a recovery on the five notes.

Sustaining his insistence the court erred in overruling the demurrer to the petition, he argues:

''The petition failed affirmatively to allege any right of the personal representative of Joel Weatherford to the notes or to collect same, and that the petition admits that defendant has, since the death of the plaintiff intestate, been in possession of the notes and does not allege that his withholding or the possession thereof is wrongful or illegal.''

To sustain this argument, he cites Daugherty v. Northern Coal & Coke Co., 174 Ky. 433, 192 S. W. 501; McBride v. Allen, 222 Ky. 725, 2 S. W. (2d) 391. These cases do not deal with the subject-matter presented in Hollon's argument. The petition contains a proper

averment showing the reason of the estate's failure to file the notes evidencing the indebtedness for which it seeks a recovery. Its averment in this respect fulfills the requirements of section 120 of the Civil Code of Practice, and thus absolves the statement of the cause of action as contained in the petition of the criticism now urged against it.

His plea that the failure to revive the action of William Weatherford, administrator of the estate of Joel Weatherford, within twelve months as a bar to this one, is untenable. See Sackett v. Grinstead, 176 Ky. 91, 195 S. W. 103; 1 C. J. 26; Wood-Mosaic Co. v. Fish's Adm'x, 236 Ky. 86, 32 S. W. (2d) 713. The failure to revive an action within a year after the death of a party is only a bar to further prosecution of that particular action, and not a bar to the cause of action or a recovery. Ellis v. Johnson, 4 Ky. Law Rep. 991; see Wood-Mosaic Co. v. Fish's Adm'x et al., supra. The burden of proof was upon Hollon not only to establish the payment of the notes by services rendered, and to be rendered, in accordance with the contract alleged to have been made at the time of the surrender and cancellation of the notes, but to prove that Weatherford agreed to accept same in satisfaction of the five notes. The proving the rendition of the services, and the acceptance thereof by Weatherford, did not relieve him of the burden of establishing by competent evidence the agreement between him and Weatherford. The proof of the rendition of the services and Weatherford's acceptance of the same, or receiving the benefits thereof, is insufficient to avert judgment on the notes without further evidence establishing the agreement between them, and the surrender and cancellation of the notes in accordance therewith. The evidence showing the relations of Hollon and Weatherford, the condition of the health of Weatherford and his wife after the execution and delivery of the deed to the 81 acres, and the services rendered them, it should be admitted, is, of itself, insufficient to establish an agreement between them concerning the surrender and cancellation of the five notes. One or more of the heirs of Joel Weatherford was introduced by the administrator and examined "concerning verbal statements of," "transactions with," and "acts done" by, Weatherford and Hollon. But no one of them was interrogated concerning the alleged con-

tract claimed by Hollon to have been entered into by and between him and Joel Weatherford at the time and place, he asserts, the agreement was made, whereby the notes were surrendered and canceled in consideration of the services theretofore and thereafter rendered by Hollon. It should be apparent that merely introducing an heir of Weatherford and examining him concerning topics other than the agreement of Hollon and Weatherford, relative to the surrender and cancellation of the five notes, did not render his testimony concerning the latter competent, within the rule stated in subsection 2 of section 606, Civil Code of Practice. Hollon does not claim that any one of the heirs was present when the transaction took place, or either of them heard the statements of himself and Weatherford at that time.

The evidence touching the services rendered by Hollon and received by Weatherford was entirely irrelevant and utterly immaterial in the absence of further evidence establishing the agreement between them at the time and place he declares the five notes were canceled and surrendered. Though his testimony concerning the services performed by him and wife for Weatherford and wife was admissible, still, in view of the Civil Code of Practice, so much of it as tended to establish the agreement between him and Weatherford at the time he claims that the five notes were surrendered and canceled was clearly incompetent, and, if the exclusion of the former was an error, it was harmless. Foley v. Dillon, 105 S. W. 461. 32 Ky. Law Rep. 222; Barton v. Barton's Adm'r, 142 Ky. 487, 134 S. W. 902; Turner's Adm'r v. Ward, 201 Ky. 295, 256 S. W. 389; Hardin's Adm'r v. Taylor, 78 Ky. 593; Harris v. Harris' Adm'r, 5 Ky. Law Rep. 179; Cofer v. Gardner, 9 Ky. Law Rep. 196; Dills v. Scroggins' Ex'x, 251 Ky. 452, 65 S. W. (2d) 464.

The vital, determinate issue is not whether Hollon had performed services for Weatherford and wife; it is, Did he make the agreement to do so, and surrender and deliver the five notes to Hollon in May, 1926, in accordance therewith?

It is true "the possession of an instrument by the party obligated to pay the same, is evidence of payment." 8 C. J. sec. 812, p. 581; Ellis' Adm'r v. Black-

erly, 78 S. W. 181, 25 Ky. Law Rep. 1557; Graves v. Wood, 3 B. Mon. 34; Callahan, etc., v. Bank of Kentucky, 82 Ky. 231, 6 Ky. Law Rep. 188; Coy's Adm'r v. Long, 205 Ky. 706, 266 S. W. 387; also, where the maker of the instrument is in possession of it, the burden of proof that it has not been paid rests upon the obligee. Henderson v. Lightner, 92 S. W. 945, 29 Ky. Law Rep. 301. The presumption of payment in such case is not conclusive, nor will it be indulged where it is shown that the maker of the instrument has had, or ·has, access to the obligee's papers.

The prevailing rule is:

"Mere possession of an instrument by the maker under circumstances laying his possession open to suspicion gives rise to no presumption of payment, nor does such presumption arise if possession may be satisfactorily accounted for upon any other reasonable theory than that of payment. If the maker has access to the papers of the holder and may reasonably have acquired the instrument without payment there is no presumption of payment. The obligor's possession of a negotiable instrument before due of itself creates no presumption of payment."

Haldeman v. Martin, 205 Iowa, 302, 217 N. W. 851, 852; Erhart et al. v. Dietrich, 118 Mo. 418, 24 S. W. 188; Dencer v. Jory, 131 Or. 653, 284 P. 163, 70 A. L. R. 855, and annotation, including citation of cases from this jurisdiction.

It is admitted that Weatherford kept the five notes in a "safe" which he had constructed and used in his home where Hollon and his wife resided, both before and after the death of Weatherford and wife. At the time the deed to the 81 acres was executed and delivered, Weatherford and wife had, and used, in their home, household and kitchen furniture sufficient to supply five or six rooms. He received of the federal government the pension checks aggregating the amount hereinbefore stated. At his death he only owned, according to Hollon's theory, substantiated by the evidence in his behalf, an old stove, a box of ancient tools, and an overdraft of $29.74. It is undisputed that he was frugal, and, excepting purchasing supplies for the home, he engaged in no business. Indeed, according to

the evidence favorable to Hollon, he was not physically able to engage in any character of business. Hollon cultivated the land, and whilst doing so, in some of the years, he rented and cultivated other land, using the crops on the farm, except the tobacco, which he sold on the market. It is not definitely shown that he did or did not so produce more than was necessary to support himself and family; yet it is shown that he accumulated money with which to pay the Lane note.

Hollon, in his pleading, and Bessie Cox, in her testimony, declare that the five notes were surrendered and delivered in May, 1928. They were not then due; the other three were. At that time, Hollon had not paid the Lane note. Just why Weatherford would surrender the notes which had not matured, and retain those due, is without explanation. This fact, considered in connection with the other developed facts and circumstances, is inexplicably inconsistent with Hollon's claimed agreement with Weatherford by which he avers he obtained possession of the five notes.

No witness other than Bessie Cox testified concerning the surrender and cancellation of the notes. Her testimony is conflicting and confusing, indefinite and equivocal. She declraes that Hollon's signatures to them were torn off in her presence. They are here presented, and an examination of them for ourselves convinces us the signatures were clipped therefrom with a sharp instrument. She was unable to state any portion of the conversation between Hollon and Weatherford, so indispensably necessary to establish their agreement by which the notes, it is claimed, were surrendered and paid by service theretofore and thereafter rendered by Hollon, other than that she heard Weatherford say "he wanted to give him [Hollon] something." And in describing what took place between them, her language is:

"He first gave Johnnie the notes and told him to mark them paid and John tore his name off of them."

The trial court declined to accept her testimony as sufficient to show it was agreed by Weatherford to surrender and cancel the notes in consideration of services, as alleged by Hollon. In his finding, we concur. The facts and circumstances, considering the doubtful testi-

mony of Bessie Cox, are sufficient to support the judgment.

Wherefore, it is affirmed.