CASE 37—BILLS OF EXCHANGE—SEPTEMBER 23, 1884.

# Callahan, &c., v. Bank of Kentucky.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The law presumes that a note in the hands of the maker of it, indorsed by the payee, has been paid.
2. But if the indorsement has been made for the accommodation of the maker, by the payee, in order to enable the former to have it discounted, this presumption does not apply.
3. The contract of an indorser is, that the maker will pay if the paper is presented at maturity and payment demanded, and it is not paid.
4. Notice of the dishonor of a bill to one who is the assignee of the payee (for the payment of his debts) is sufficient.

LANE & HARRISON AND BIJUR & DAVIE FOR APPELLANT.

An accommodation indorser of commercial paper, to be held liable thereon, must be given due notice, if it dishonor and protest; and a notice to one to whom such indorser has made an assignment of the larger portion of his estate for the benefit of his creditors, will not bind the indorser. (Parson Contracts. volume 1, 277; 5 Leigh, 54; 1 Smith's Leading Cases, 73; Daniel Nego. Inst., sections 970, 972; Law Rep., 1 Eq., 5; 3 Kent's Comm., 110; Parson's Bills and Notes, 629 7 Manning; Granger & Scott, 400; 11 East, 114; 4 Leigh, 53; 6 Serg & Rawle, 157; Daniel Nego. Inst., sections 1171, 1172; Story on Bills, 386; 19 Vesey, 216; Byles Bills, 216; Ex. Pato Baker, Law Reporter, 4; Ch'y Din., 797; 16 Bankrupt Reg., 1; 25 Mich., 40; Bump Bankruptcy, 247; 3 McLean, 289; 2 Story, 158; 1 Bissell, 157; 26 Ark., 46; 3 W. & M., 67; 16 Banks of Kentucky, 397; 11 La., 534; 51 Ala., 305; 23 Penn. Stat., 476; 4 Sand, 93; 2 Conn., 654; Farmers' Bank v. Butler, 3 Litt., 498, 2 Peters, 135.)

GOODLOE & ROBERTS FOR APPELLEE.

1. That appellant was an accommodation indorser of the bill for the benefit of Weller & Son is beyond question.
2. Appellant, having made so strictly an assignment for the benefit of his creditors and for the payment of his debts, notice of the dishonor of the bill to the assignee, instead of appellant, is sufficient to hold him bound as indorser. (Parson's Bills. 500; Story's Prom. Notes, section 305; Thompson's Law of Bills, 535; Byles on Bills, 436; 4 Barn & Cress, 517; 55 N. Y., 465; 3 Keys, 343; 9 Smides & Mar., 476; Daniel Nego. Inst., volume 2, section 998.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The firm of W. L. Weller & Son, on November 15, 1877, executed a note for $3,500, payable to the order of James Callahan, at the Bank of Kentucky, four months thereafter. The latter indorsed it in blank and delivered it to said W. L. Weller, who also indorsed it in blank, and discounted it to the appellee before its maturity, thereby putting it upon the footing of a for-eign bill of exchange.

The proceeds were drawn out of the bank by W. L. Weller, but for the use of said firm—in fact the entire transaction was for its benefit, Callahan being merely an accommodation payee and indorser.

Before the maturity of the note W. L. Weller & Son had been adjudged bankrupts, and the appellant, Cal-lahan, being heavily embarrassed, but not in fact insolv-ent, made an assignment of property for the benefit of his creditors to the appellant, Harry Stucky. The deed described certain realty embraced by it, and ap-parently conveyed the entire estate of the grantor to the assignee.

It expressly so stated as to his personalty, save the portion that was by law exempt to him as a house-keeper; and provided that after the payment of all his debts and liabilities and the expenses of the trust, the trustee should transfer any balance of the trust prop-erty left in his hands to Callahan's wife.

The testimony shows, however, that the deed of trust did not cover two tracts of land, then owned by Calla-han, and that after the payment of all his indebtedness there will be left at least $40,000 in the trustee's hands.

The note not having been paid at maturity was pro-

tested for non-payment, and notice of protest duly given to Stucky, as assignee; but none was given or sent to Callahan, although he continued to reside and transact business at the same place, and in fact he does not seem to have had any notice or knowledge of the dishonor of the paper until long after its maturity.

The assignee, Stucky, brought this suit to settle his accounts, making the appellee a defendant; and it having by its answer, counter-claim and cross-petition, asserted the note both against Callahan and the trust estate, the court below rendered a personal judgment for it against the one, and adjudged that it be paid *pari passu* out of the other, with the general debts of the estate.

Two questions are presented for our decision:

*First.* Did the indorsement by Callahan and the delivery of the note by him to W. L. Weller, one of its makers, extinguish the debt?

*Second.* Was the notice to Stucky sufficient to charge Callahan, or was the latter released as indorser because notice of protest was not given or sent to him?

The law presumes that a note in the hands of the maker of it, indorsed by the payee, has been paid, and one to whom the maker has discounted it can not recover against the indorser, unless it was indorsed for the maker's accommodation. (Callahan v. First National Bank of Louisville, 78 Ky., 604.)

Weller & Son, however, did not indorse this note to the appellee. It never came to the hands of the makers after its indorsement by Callahan, but to that of W. L. Weller alone, and he alone indorsed it.

The firm had an account at the bank, but the pro-

ceeds of the note were placed to his individual credit,. and drawn out upon his individual check.

The firm account was distinct from his individual account.

If, however, the possession of the note and its being discounted by one of the makers after its indorsement by Callahan could be considered as equivalent in law to such possession and action by the firm, or even if it had then come to the possession of the firm and been indorsed in its name, the debt would not have been extinguished in this instance, as it was not so intended.

When the answer of the appellee was drawn, the words, "Pay the within to the order of W. L. Weller," were written over the indorsement of Callahan, and the words, "For value received, pay to Prest., Direc. & Co., of Bank of Louisville," over that of Weller.

It alleged that the note was indorsed in blank by Callahan and given to W. L. Weller with authority to discount it for the use of W. L. Weller & Son; that Weller indorsed his name on it and discounted it for value to the bank in the usual course of business, and before maturity, and that the proceeds were paid to said Weller.

But by an amended petition it was stated that the note was made payable to Callahan and indorsed by him for accommodation, and, as he then knew, to enable Weller & Son to discount it to the appellee; that the name of W. L. Weller was indorsed upon it simply for convenience, and in order that the money might be placed to his credit in bank, and drawn out upon his check, thus saving the trouble of placing it to Callahan's credit and then procuring his check upon,

which to draw it; and that the bank discounted it upon the faith of Callahan's indorsement. These allegations are fully sustained by the testimony; and the court therefore correctly permitted the appellee, upon the trial, to strike out said assignments over the names of Callahan and Weller, and to write over the name of Callahan an assignment of the note to the bank; and did not err in deciding that the possession and indorsement of it by W. L. Weller, after its indorsement by Callahan, did not extinguish the debt. (Long & Robertson v. Bank of Cynthiana, 1 Littell, 290.)

The failure to notify Callahan of the dishonor of the paper presents a more troublesome question. After a careful review, we have been unable to find any exact precedent.

The contract of an indorser is, that the maker of the note or drawee of the bill will pay it if it is presented at maturity and payment demanded; and, if he does not, that then the indorser will pay it, provided he is duly notified of its dishonor.

The undertaking is collateral and conditional. The indorser has a right to fix the terms upon which he will be bound; and, having done so, the holder of the paper can not alter them, and must comply strictly with them.

It is a condition precedent to the liability of the indorser, that he shall be duly notified of the non-payment of the paper.

The certainty of this rule creates security and stability in commercial transactions. Its object is to put the party on the alert; and by notifying him that his estate will be held liable, to enable him to look to the party in front of him.

In the case of a bankrupt drawer or indorser, the law is not well settled whether notice of protest is to be given to him or the assignee, or to both of them.

The language of most of the text writers upon this point is singularly uncertain.

Parsons says: "If a person entitled to notice be bankrupt, notice should be given to him if his assignees are not yet appointed. If they are, notice should, *perhaps*, be given to them if the fact of their appointment is known to the holder, or might be known by him, by the exercise of due diligence, but notice might, *perhaps*, even then be sufficient, if given to the bankrupt. Under our State insolvent laws, and wherever the point has not been settled by decision or a positive usage, it would seem to be the safest course to give notice both to the insolvent and to the assignees also. If the insolvent has absconded, notice should be given to the assignees; and, if they are not appointed, we should suppose that a delay until their appointment would not discharge any one; and, although notice may be given to any one holding or representing the estate, we should think it better to notify the assignees when appointed." (1 Parsons on Notes and Bills, page 500.)

The language of Story is: "If the party entitled to notice has become bankrupt, and assignees have been chosen or appointed, notice to the assignees is proper, and will be sufficient." But he also says: "If any of them are bankrupt, notice should be given to them and to their assignees, if any are appointed; otherwise, to the bankrupts themselves." (Story on Bills of Exchange, sections 305, 389.)

Another writer uses this language : "If the party entitled to notice be a bankrupt, notice should be given to him before the choice of assignees, and after such choice to them." (Chitty on Bills, page 228.)

"If the drawer of the bill," says Mr. Byles, "become bankrupt, notice must, nevertheless, be given to him—at all events before the choice of assignees. If the assignees are appointed, *perhaps* notice should be given to them." (Byles on Bills, page 216.)

The language of another leading authority is equally cautious. He says : "If the party be bankrupt, it is best to give notice to him and to his assignee also. If there be yet no assignee appointed, notice to him is sufficient, and *perhaps* it might be sufficient, even if one had been appointed. If given to the assignee alone, it would *probably* be sufficient." (Daniel on Negotiable Instruments, section 1002.)

The weight of authority seems to be that notice to the assignee of a bankrupt is sufficient ; and by analogy the rule should be the same as to the assignee of an insolvent. It is true that a bankrupt and an insolvent do not stand upon exactly the same footing. The former may be discharged from liability for his debts, while the latter can not be ; and the former can not be sued, while judgment may be obtained against the latter ; but yet the main object of requiring notice to be given of the dishonor of negotiable paper, is that the indorser may protect his estate by enforcing payment against or obtaining security from those liable to him upon it, and the rule as to notice should be the same, whether the estate has passed into the control of an assignee by a voluntary conveyance or by operation of law.

In the one case the debtor selects a person to take charge of his estate and distribute its proceeds to his creditors, while in the other the same end is accomplished by operation of law. If notice to the assignee of the bankrupt is sufficient, because he is the representative of the estate, then the same reason applies with equal force to an assignee under a voluntary conveyance ; and although the deed from Callahan did not in fact transfer his entire estate, yet it must be treated as a general assignment in considering this question.

We must not be understood as determining whether a notice of the dishonor of negotiable paper sent to the bankrupt or insolvent alone, and not to the assignee, would or would not be sufficient, as that question is not presented in this case ; but it seems to us that it is consistent with both reason and law, and necessary to the usefulness of commercial paper, that when one person, by an assignment of his estate, has placed it and the settlement of his debts in the control of another, that a notice to the latter of the dishonor of paper should be sufficient.

It is urged, however, by the distinguished counsel for the appellants, that even if this be so, yet Callahan was entitled to a personal notice, because he did not in fact assign all of his estate ; was not in fact insolvent ; and only created a trust on the larger portion of his property to secure his creditors.

By the deed of assignment the assignee was to take control of the property, rent all or any of the real estate, and collect the rents, receive and collect the personal estate, compromise claims against the estate, insure it, investigate all demands against Callahan before

recognizing them as valid, and determine the extent of his liabilities, avoid litigation as far as possible, and settle all his indebtedness. In all this work Callahan was to aid the assignee.

Evidently the purpose and intention was to give the assignee full power as to the liabilities of the grantor. As to them he represented him as fully as if he had been his personal representative.

He had full power as to their settlement; and it was given, not because Callahan was insolvent, but because he desired to place his affairs in the hands of some one who was competent to manage them in their confused condition.

Under the form of a deed of assignment, for the benefit of his creditors, he made Stucky his general representative as to his indebtedness; and while an agent to receive and discharge debts, may not have the power to accept or indorse bills so as to bind the principal, yet it is well settled that notice of their dishonor given to a general agent is valid as to the principal (Daniel Neg. Insts., volume 2, section 998; Byles on Bills, page 293; Parsons on Bills, volume 1, page 499; Fasson v. Hubbard, 55 N. Y., 465); and a general agent is one whom a man puts in his place to transact all of his business of a particular kind.

Wherefore the judgment is affirmed.