CASE 63—ACTION BY CITIZENS' SAVINGS BANK AGAINST J. P. MORE-
LAND'S ADMR. AND OTHERS ON A BILL OF EXCHANGE.—JAN. 21.

# Moreland's Admr., &c. v. Citizens' National Bank.

### APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL.   AFFIRMED.

BILL OF EXCHANGE—NOTING OF PROTEST—ASSIGNMENT OF DRAWER—
NOTICE—EXCEPTION WAIVED.

Held:   1. The words "Protested for non-payment" endorsed by a
notary on a bill of exchange, and in addition the day of the
month and the year and signed by the notary, is a sufficient
noting of protest.

2. After the notary had written the instrument of protest he destroyed
a slip of paper on which he had noted the protest as a mem-
orandum from which to write the instrument of protest.   The
destruction of this slip, whether done purposely or acciden-
tally did not invalidate the protest.

3. Though, between the drawing and maturity of a bill of exchange
the accommodation drawer makes an assignment for the bene-
fit of creditors, notice of protest to him alone is sufficient.

4. The words in a bill of exchange, "one hundred and eighty days
pay to the order of," import that it is due 180 days after date.

5 No exception having been filed to the report of commissioner and
no question made as to its correctness except in the brief in
this court, it is too late to raise the question here.

W. S. PRYOR, FOR APPELLANT.

The bill sued on in this case was payable in 180 days, and
in order to avoid the effect of the demand and protest for
non-payment, the court below has interpolated in the bill the
words "after date."

We perceive no reason for adding to the obligation of this
commercial paper, words not inserted by the parties to it.   There
is no ambiguity in the writing and a plain note payable in 180
days must mean what it says on its face.   In computing time
on the assumption that the paper reads as the parties intended
it should, the day on which it was executed is counted as one
of the 180 days, and not being protested until September 28,

Moreland's Admr., &c. v. Citizens' Savings Bank.

1892, makes it one day too late, (the paper having been drawn March 29, 1892). The authorities on the points raised are all found in the able brief of Messrs Walker & Slack, and it seems to me the argument they adduce is unanswerable.

WALKER & SLACK, FOR APPELLANT.

## SYNOPSIS.

1. By appellee's charter, each bill of exchange in this record is placed upon the footing of a foreign bill of exchange. 2 Acts, 1883-1884, sec. 4, p. 1191.

2. In order to fasten liability upon an accommodation drawer or indorser upon a foreign bill of exchange, or one placed upon its footing, it is essential that the notary write out on the very day of its maturity, when dishonored, the protest *in extenso*, or make a noting or initial protest, which is a minute consisting of all the steps taken, and so complete as to exclude the exercise of memory, and from which alone the extended protest may be written out on a subsequent day. Walden, &c. v. Citizens' Savings Bank, (Ky.) 43 S. W., 488, 495 and 498; 2 Daniel on Neg. Inst (4 ed.) secs. 939 and 940; N. 5, p. 12, Byles on Bills (250) 396; Giaque's Manual, pp. 173 and 174; 2 Am. and Eng. Ency. of Law, 406 and N. 3; Read v. Bank of Ky., 1 Mon., 93; Baily v. Dozier, 6 How. (U. S.) 23; 16 U. S., 588 and 589.

This law "is founded on reason and the necessities of trade. It exacts nothing harsh, unjust or unreasonable," and its strict observance is essential in determinations concerning mercantile paper, and in fixing the liability of drawer and indorser. Denniston v. Stewart, 17 How. (U. S.), 606; 21 U. S., 723; Sebree Deposit Bank v. Moreland, 96 Ky., 157 and 158.

3. Evidence of the habits and customs of a notary is relevant to show that a particular act was done by him in accordance with such habits and customs, and the presumption that it was done in a way different from his usual course of business is illogical, and never allowable. Lawson on Usages and Customs, p. 81; Miller v. Headly (5 Johnson, 375), 4 Am. Dec., 372; Union Bank v. Stone, (50 Maine, 595), 79 Am. Dec., 635; Shove v. Wiley, 18 Pick., 561; Smith v. Montgomery, 5 Mon., 502; 7 Am. and Eng. Ency. of Law, 63.

4. Where the matter is in issue a presumption that an officer performed his duty is never indulged, but is determinable only by the evidence logically relevant. McKelvey on Evidence, (Hornbook Series), 53.

5. Where a drawer or indorser has made an assignment under State insolvent laws, and the holder or notary knows of it at the time of protesting, notice of protest must be given to the

Moreland's Admr., &c. v. Citizens' Savings Bank.

assignee in order to hold the estate in the hands of the assignee liable. Callahan, &c., v. Bank of Kentucky, (82 Ky., 231), 6 Ky. Law Rep., 188, 191 and 194; 3 Randolph on Com. Paper, secs. 1243 and 1330; American National Bank v. Junk Bros. Lumber and Manufacturing Co., (Tenn.), 30 S. W., 755.

6. Where computation of time is to be made from the act done, the day on which it is done must be included; but if to be made after or from the day itself, the day must be excluded. Mooar v. Cov. Bank, 80 Ky., 305; Chiles v. Smith, 13 B. Mon., 461; Hardley v. Cunningham, 12 Bush, 401; Wood v. Com., 11 Bush, 220.

7. Where the matter of usury is a principal fact in issue, it is determinable according to the evidence, and exceptions to the commissioner's report are not necessary or required as in cases involving settlements of estates.

8. The entries in the books of a bank can be proved only by the party who made them, or, in case of the death or absconding of such party, by some one acquainted with his handwriting, and exact copies must be produced. Walden, &c. v. Citizens' Savings Bank, (Ky.) 43 S. W., 497; Poor, &c. v. Robinson, &c., 13 Bush, 294 and 295; Bank v. Smith, 9 B. Mon., 611.

9. In actions against drawers or indorsers, notice must be averred and proved, and can not be presumed to have been given, and the burden is upon the holder to show that they were notified in due time. 2 Am. and Eng. Ency. of Law, 413; Id., 407, n. 3, and 409, n. 11. 3 Randolph on Com. Paper, secs. 1250 and 1204; 2 Id., secs 760 and 1219; 2 Dan'l on Neg. Inst., sec. 972.

10. In giving notice of protest, the notary acts as an officer, and is liable for negligence on his official bond. 3 Randolph on Com. Paper, sec. 1237, pp. 263 and 264; 2 Dan'l on Neg. Inst., sec. 991, p. 50 and N. 5; Todd v. Edwards, &c., 7 Bush, 94; Neal & Co. v. Taylor, 9 Bush, 382 and 383; Mulholland & Bro. v. Samuels, 8 Bush, 63 and 64.

J. A. DEAN, ATTORNEY FOR APPELLEE.

1. The written opinion of the lower court in reference to the bill dated March 29, 1892, payable one hundred and eighty days, the words "after date" being omitted, is as follows: "I am of the opinion as a matter of law that the contention of defendants is hypertechnical. I conclude the meaning and intent was to make it 180 days after date, and it was so understood by the parties, and "after date" was inadvertently omitted."

We think this court will concur in that conclusion.

2. We contend that the memorandum of the notary from which

to write up the certificate of protest, is of no further value after the protest was extended by writing up the certificate of protest, and its further preservation was not necessary; the certificate then becoming the evidence of the protest and not the memorandum.

3. The commissioner in his report, ascertained the amount due on each bill, after eliminating usury, to which no exceptions were filed, and same was confirmed and judgment rendered thereon, and we contend it is too late now, even if any error was committed, to raise objection thereto.

### AUTHORITIES CITED.

Citizens' Savings Bank v. Hays, 96 Ky., 365; Murphy v. Citizens' Savings bank, 22 R., 1672; Read v. Bank of Ky., 1 Mon., 93; Young v. Bennett, 7 Bush, 474; Daniel on Negotiable Instruments, 926, 927, 939.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

The issue herein arises over certain bills of exchange. There is no issue as to the drawing, acceptance, and indorsement of them. In this action it is sought to hold the accommodation drawer and indorser responsible on them. The payment is sought to be avoided by the drawer and indorser of same on the grounds that the law was not observed in noting protest, giving notice of protest, and writing the instruments of protest by the notaries public. Two of the bills over which there is a controversy are for $5,000 each, one for $3,685, one for $3,000, and one for $3,200. These bills were drawn by J. P. Moreland, accepted by S. D. Walden, and indorsed by J. P. Fuqua. It appears that the bills (unless the one for $3,685 was not) were protested on the days that they matured. As to that bill it is insisted that it was not protesed until the day after its maturity. That defense is interposed in addition to the others heretofore stated. I. N. Parish, notary public, protested the bills for $5,000 each on the days of their maturity, and indorsed on them, "Protested for nonpayment," and, in addition to that, gave the day of the month and year, to

which indorsement he affixed his official signature. W. H. Moore was the notary who protested the bill for $3,000 and the one for $3,200. No memorandum noting the protest was left attached to either of the bills by the notary, nor was such indorsement made upon them. Either on the day the bills were protested or on a subsequent day the instruments of protest were written, but the evidence leaves no doubt that the notices of protest were duly mailed to the drawer and indorser of the several bills on the days they were protested.

The first thing which we will consider is whether the noting by Parish was sufficient. The authorities seem to be agreed that the noting of initial protest was unknown to the law as distinguished from the protest, but that it has grown into practice within recent years. It seems to be well established that, if the instruments of protest are not written shortly after the demand and protest, the noting or initial protest is necessary as a basis for the instrument of protest. 2 Dan. Neg. Inst. (4th Ed.), section 939. This court in Read v. Bank, 1 T. B. Mon., 93, 15 Am. Dec., 86, had under consideration the question as to the necessity of noting. The court said: "The protest was drawn up so soon as the ordinary course of business would permit, or at least in sufficient time to supersede the necessity of noting the bill at the moment." The court seemed to be of the opinion that, if the instrument of protest was written as soon as the ordinary course of business would permit, or at least in sufficient time to supersede the necessity of noting the bill at the moment, then those sought to be held liable were bound. We are of the opinion that the indorsements which Parish made on the bills were sufficient.

The facts as to the bills protested by Paris differ somewhat from those protested by Moore. We will not go into

the discussion of the question of the competency of evidence to prove the course of business of notaries in protesting paper; neither is it necessary for us to determine whether the instruments of protest were written on the day the bills matured, or on a subsequent day; hence the necessity is obviated of determining whether the proof is sufficient to impeach the dates of the instruments of protest, they bearing dates that the bills matured. If the noting of protest was made, the instruments of protest could have been prepared thereafter. Moore testified that when he protested the bills he attached to each of them a memorandum showing the protest, but when the instruments of protest were written he destroyed it, as he had no further use for it. Counsel for appellee urges that the preservation of these slips was essential to the validity of the protest *in extenso,* as they form a necessary part of the record in establishing the steps that must be taken in order to fix liability upon the drawer and indorser. The object of noting is to have a record from which the instrument of protest can be written, so a notary will not be required to rely upon his memory as to the facts. If the noting was made, the destruction of it, whether it was purposely or accidentally done, could not invalidate the instrument of protest which was based upon it. It preserves the right of the notary to prepare that instrument, and, when done, the essential steps have been taken to fix the liability upon the accommodation drawer and indorser. The bill having been protested for non-payment and notice having been given to the drawer and indorser, the noting having taken place, and the instrument of protest having been executed, the liability of the drawer and indorser was fixed. The destruction of the paper upon which the noting was made could not relieve them of the

liability that had attached by the necessary act of the notary.

After the several bills were drawn, and before their maturity, Moreland made an assignment to E. P. Taylor for the benefit of his creditors. When the bills were protested, notices of protest were not sent to the assignee, but to Moreland. It is insisted that, as the assignee accepted the trust, and qualified as such assignee, notices of protest should have been given to him, instead of to Moreland, in order to bind the trust estate. The exact question here presented has not been before this court, although this court, in Callahan v. Bank, 82 Ky., 231, 6 R., 188, held that notice of the dishonor of a bill to one who is the assignee of the payee was sufficient. But the court said: "We must not be understood as determining whether a notice of the dishonor of negotiable paper sent to the bankrupt or insolvent alone, and not to the assignee, would or would not be sufficient, as that question is not presented in this case." The text-writers upon this question are extremely unsatisfactory. 1 Pars. Notes & B., 500, in speaking of the person to whom notice of protest should be given in the case of a bankrupt, says: "That perhaps the notice should be given to the assignee, if the holder knows or might know, by the exercise of due diligence, that the estate is in his hands:" but he adds: "But notice might perhaps even then be sufficient if given to the bankrupt." Byles, Bills, page 216, says: "If the drawer of the bill become bankrupt, notice must nevertheless be given to him, in all events, before the choice of assignees. If the assignees are appointed, perhaps notice should be given to them." Daniel, Neg. Paper, section 1002, says: "If the party be bankrupt, it is best to give notice to him, and to his assignee also. If there be yet no assignee appointed, notice to him

is sufficient, and perhaps it might be sufficient, even if one had been appointed. If given to the assignee alone, it would probably be sufficient." When a party assigns all of his property for the benefit of his creditors and places it in the hands of a trustee for distribution, all of his creditors are entitled to participate in the distribution of it. This is true whether the debts have matured or not. Moreland's liability on these bills existed at the time of the assignment ,and, if it was preserved, then the holder of them was entitled to participate in the distribution of the proceeds of the assigned estate. He being personally liable to the holder, it was important to it that he receive notice of protest that that liability might be preserved. When that liability was preserved, it seems to us to necessarily follow that the holder of the bills is entitled to participate in the trust estate, because the very purpose of his assignment was to pay his liabilities in full or pro rata, as the case may be. We conclude that notice to Moreland was sufficient to preserve his liability, and, if his liability continued, there is no escape from the conclusion that the holder of the bills which evidenced it was entitled to participate in the distribution of the estate.

The bill for $3,685 reads as follows: "Citizens' Savings Bank, Owensboro, Ky., Mch. 29, 1892. $3,685.00. No. 14,773. One hundred and eighty days pay to the order of J. A. Fuqua, negotiable and payable at Citizens' Savings Bank, thirty-six hundred and eighty-five dollars, for value received, with interest at ten per centum per annum after maturity, until paid, and charge to account of J. P. Moreland. To S. V. Walden, City." The note was protested upon the idea that the bill was payable 180 days after date. It is insisted for the appellant that it was due within 180 days. In our opinion, the words import that the bill was due

Moreland's Admr., &c. v. Citizens' Savings Bank.

180 days after date. It is often necessary for a court, by construction, to supply words obviously omitted through oversight, to give an instrument the meaning manifestly intended. In order to construe it as meaning within 180 days, we would have to supply the word "within." We know, from the customary way of drawing such instruments, that they are usually payable at the time specified after the date upon which they are drawn. The parties did not mean that the money should be paid on or before 180 days, and, if we should hold that it was to have been paid within 180 days, we should, in effect, hold that it was to be paid on or before 180 days.

The commissioner to whom the case was referred to purge the bills of usury made a report showing that he had done so. No exceptions were filed to the report, and no question made as to the correctness of it, except in the brief in this court. It is too late to raise the question. It was the duty of the appellants, had there been a correction which should have been made in the report of the master commissioner, to have called the lower court's attention to it, so that he could have had an opportunity to make the correction. Besides, we fail to find an error in the report of the master commissioner.

The judgment is affirmed.

Petition for rehearing by appellant overruled.