F. W. CLINKSCALES, Respondent, v. L. G. CLARK, Appellant.

Kansas City Court of Appeals, May 3, 1909.

1. **PRINCIPAL AND AGENT: Fraud: Dual Agency: Evidence: Jury.** The evidence relating to the relations and conduct of the defendant to the plaintiff as vendee of certain Texas real estate is reviewed and held that defendant was the agent of plaintiff and as such had no right to make a secret profit out of the transaction whatever may have been his relation to the vendor. and that his clever attempts at concealment demonstrate that he knew he was violating his duty to the plaintiff and that plaintiff was entitled to go to the jury on the existence of confidential relations between the parties and their fraudulent breach by the defendant.

2. ———: ———: ———: ———: **Value of Land.** *Held*, further, on the record that it was immaterial whether the part of the land purchased by plaintiff was worth more than the price he was induced by the deceitful practices of defendant to pay, since he was entitled to fair treatment at the hands of his agents and a full disclosure of all terms of the agent made for his benefit.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*J. S. Crawford, Busby & Busby* and *Jones & Conkling,* for appellant.

(1) The peremptory instruction requested by defendant at the close of all the evidence in the case should have been given for the following reasons: First: In actions of fraud and deceit, to entitle plaintiff to recover, it is incumbent on him to show that he suffered actual damage. In the case at bar, plaintiff failed to show any actual damage, hence he made no case, and the demurrer should have been sustained. Thompson v. Newell, 118 Mo. App. 405; Bank v. Buyers, 139 Mo. 652; Lewis v. Land Company, 124 Mo. 688; State ex rel. v. West, 68 Mo. 229; Lenox v. Harrison, 88 Mo. 496. (2) No confidential relations existed between plaintiff and defendant. Spence v. Palmer, 115 Mo. App. 76; Anderson v. McPike, 86 Mo. 293. (3) The court erred in excluding testimony of witnesses Walling, Anderson and Arnold, as to character, value and improvements on section 12.

*Lozier, Morris & Atwood,* for respondent, filed argument.

JOHNSON, J.—This is a suit for damages alleged to have been sustained by plaintiff from the fraud and deceit of defendant practiced during the existence of a confidential relation between the parties.

Defendant denies in his answer that he acted with reference to the subject of the controversy as the fiduciary of plaintiff and alleges that the money obtained, which plaintiff now seeks to recover, was paid him as a commission for services he rendered as agent for the owner of land purchased by plaintiff. In other words,

that he was the agent of the vendor of the land, not the agent of plaintiff, the vendee. Trial to a jury resulted in a verdict and judgment for plaintiff in the amount demanded and defendant appealed.

The most important question for our solution (raised by the demurrer to the evidence) is whether or not the evidence most favorable to plaintiff tends to show that defendant, while acting as the fiduciary of plaintiff, abused his trust to his own advantage and to the damage of plaintiff. Material facts adduced by plaintiff are as follows: The parties both lived in Carrollton and had been acquainted intimately for about fifteen years. Plaintiff was a clerk in a bank and had some money; defendant was a merchant. In the latter part of the year 1905, defendant made several trips to Texas and bought three sections of land there. He was contemplating another visit to that State when he met plaintiff and engaged in conversation with him, the substance of which thus is stated by plaintiff:

"I met Mr. Clark in the court house down in the basement here one day, and he got to talking about his Texas lands down there and I asked him about them. He had been buying some lands and I asked him about the country, what he thought about it. He was telling what a good country it was and what a good soil it had there and what he thought about the chance of investment, and he remarked to me at the time that he would like for me to go down there with him sometime, and I asked him when he was going down. He said he would go down on the next excursion, he thought, and would like for me to go with him. At that time I wasn't in the bank and I could arrange to go very well and I told him I thought I would go with him and he told me he would give me any benefit or judgment he had on the land, quality and so on, and that he knew about the valuation of it and he would practically know just about what I was paying, what the land was worth, and he would give me the benefit of that knowledge that he had." Pursuant to this

conversation, plaintiff and defendant made a trip to Texas in February, 1906, to purchase land. Defendant knew of four sections containing 2,560 acres which a man named Webb owned and had placed in the hands of a firm of Texas real estate agents for sale, agreeing to give them a commission of five per cent of the proceeds of a sale effected by them. The agents were instructed to sell the land in a body for $8.50 per acre and in their negotiations with defendant, agreed to give him half of their commission if he effected a sale for them. Defendant communicated this offer to plaintiff and agreed to give plaintiff one-half of the commission paid to him if plantiff would join him in the purchase of the four sections. He proposed that plaintiff take three of the sections, that he would take the one remaining, and that plaintiff might make his own selection. One of the sections, known as the "home place" was better improved and more valuable than any of the others. Its position in the tract was such that it had to be included in the three selected by plaintiff if he would have all the land selected by him in one body. Accordingly, when he accepted the proposal of defendant, he included the "home place" in his selection. At first, plaintiff was informed that the price of all the land was $8.50 per acre, but before the sale was closed, defendant had an interview with Webb in which he suggested that the home section be priced at $9.50 per acre—an advance of $640 for the section—that the price on the three remaining sections remain at $8.50 per acre, and that the advance on the home section be paid to defendant as an additional commission. Webb and his agents accepted this proposition, and the inference that they agreed to keep the arrangement secret from plaintiff is supported by facts and circumstances in the record. When the parties met to close the sale, plaintiff stated that he understood the price was $8.50 per acre for the entire tract. Defendant told him he was mistaken, that the price on the home section was $9.50 per acre and appealed to Webb to confirm the statement.

Webb did confirm it, but in somewhat ambiguous language. In the course of the conversation, plaintiff expressed his confidence in the honesty of defendant and his reliance on him and, satisfied that he was being fairly treated by his friend, entered into a written contract with Webb for the purchase of three sections, including the home place at the price above stated. At the same time, defendant contracted with Webb for the other section at $8.50 per acre. Afterward, plaintiff carried out the terms of the contract, paid for the land as agreed and received a deed from Webb. Defendant, likewise, performed his contract with Webb and received his deed. When Webb settled with his Texas agents, he paid as commission $1,088, which was five per cent of the proceeds of all the land at $8.50 per acre. He would not pay commission on the $640, the amount of the rise in price on the home section. Defendant was at Carrollton when he received his half of this commission. The draft sent him was $560, which represented 2½ per cent of the proceeds of the sale, figuring the price of the home section at $9.50 per acre. He exhibited this draft to plaintiff and divided its proceeds with him. Defendant also received at Carrollton a draft for $600, the amount due him from Webb on account of his secret commission. He explains that the other $40, of this commission had been paid to him previously. He took pains to conceal from plaintiff knowledge of the fact that he had received the last-mentioned draft. A railroad agent at Carrollton cashed it for him and, at his request, refrained from "putting it through" any bank in Carrollton. The man to whom the railroad agent gave the draft endeavored unsuccessfully to cash it at Kansas City and finally succeeded in cashing it at Bosworth. When plaintiff learned that defendant had received a secret commission of $640 and that he (plaintiff) had paid it in the guise of a fictitious rise in the price of the home section, he demanded of defendant the restoration of the money, and the demand being refused, brought this suit to recov-

er the money. The above is a condensed statement of
the facts most favorable to the cause of action asserted.
Defendant admits receiving a commission of $640, in
addition to that paid him by the Texas agents and admits
that Webb did raise the price on the home section that
amount. He denies that he caused the advance to be
made by Webb, but we venture the assertion that no one
can read his testimony without becoming convinced that
the advance was made solely for the purpose of giving
him a secret profit of $640 to be paid by plaintiff.
Though with apparent fairness and generosity he offer-
ed plaintiff the option of selecting any three of the four
sections, he anticipated that plaintiff would take the
home section. Two potent reasons support this con-
clusion. No reasonable person in plaintiff's situation
would have his land in two separate tracts when he
could have it in one compact body, and defendant would
derive no advantage from a secret commission to be paid
out of his own pocket which would have been the result
had the home section fallen to him. But defendant
tries to justify his conduct and escape liability on the
following grounds:

First, he says that he was not in a position that
charged him with the performance of any fiduciary duty
to plaintiff; that he was the agent of Webb, the vendor;
that this fact was known to plaintiff and, therefore,
that plaintiff knew and acted as though he knew that he
must deal at arm's length with defendant as well as with
Webb, the vendor. Consequently, defendant assumes
that he had a right to contract with his principal for an
additional commission to be paid out of an advance in
the price of the land bought by plaintiff and to keep
knowledge of that fact from plaintiff, since the amount
of his compensation and the manner of its payment con-
cerned only him and his principal and were none of
plaintiff's business; second, he contends that the home
section was actually worth more than plaintiff paid for

137 App.—2

it and that as plaintiff sustained no actual damage, he has no cause of action though it be found that he was deceived by false statements of defendant into paying more for that section than the owner was willing to accept for it.

In this connection, complaint is made of the refusal of the trial court to permit defendant to introduce evidence to show that the value of the home section equaled and, in fact, exceeded the price plaintiff paid. We shall dispose of these propositions in the order of their statement. That defendant placed himself in a fiduciary relation to plaintiff is a fair and reasonable inference from all of the facts and circumstances in evidence in the voluminous record before us, many of which we have deemed it unnecessary to state. The parties were neighbors and close friends. Defendant had bought Texas lands and was familiar with their quality and values. Plaintiff had no knowledge of the subject. Certainly, defendant took pains to impress plaintiff with the conviction that he would give plaintiff the full benefit of his knowledge, judgment and friendship if plaintiff would join him in the purchase of a tract of land which was too large for him to purchase alone. He assured plaintiff, in effect, that he would make no profit at plaintiff's expense and his offer to divide with plaintiff what he expected to receive from the Texas agents is a strong indication of such assurance. The fact that defendant was to receive a part of the agent's commission by no means conclusively supports his contention that he was Webb's and not plaintiff's agent. It is compatible with the belief which, obviously, defendant sought to inculcate in the mind of plaintiff that he stood in the relation to Webb of a prospective buyer of the land and that the proposal by Webb's agents to divide their commission was made to induce a sale to defendant and plaintiff, his associate. Such offers are common enough in real estate transactions. These considerations move us to say that in conducting negotiations with Webb

for the purchase of the land, defendant was the agent of plaintiff and, as such, had no right to make a secret profit out of the transaction. His clever attempts to conceal important facts from the knowledge of plaintiff were most self-accusatory and demonstrate that he knew he was violating a duty he owed his associate. If this were not so, what was the necessity for having the Texas agents send him a draft for $560 as his half of their commission, when his half amounted only to $544? Obviously, he did not want plaintiff to know that his commission on the home section had been figured and paid on the basis of $8.50 per acre and not $9.50, the price paid by plaintiff. To carry out this deception, defendant was willing to pay plaintiff $8 more on this account than plaintiff was entitled to receive. Again, if defendant thought it was none of plaintiff's concern that he was paid an extra commission, why go to such elaborate pains to have the draft received in payment of that commission cashed outside of Carrollton? Consciousness of wrongdoing must have been the impelling motive, since ordinarily men do not exhibit such excessive secretiveness in the absence of real cause for concealment. Plaintiff was entitled to go to the jury on the question of the existence of a confidential relation beteween him and defendant and of the fraudulent breach by defendant of one of the duties of that relation.

What we have said answers defendant's second proposition. We are not dealing here with a question of deceit practiced by a vendor on a vendee as was the case in Thompson v. Newell, 118 Mo. App., 405, greatly relied on by defendant, but with a question of deceit practiced by an agent on his principal. It is immaterial that the land bought by plaintiff was worth all he paid for it; he was entitled to fair treatment at the hands of his agent and a full disclosure of all the terms of the agreement made for his benefit. It is elementary that an agent has no right to derive any secret profit or advan-

tage at the expense of his principal, but must give his principal the full benefit of the bargain he makes. The demurrer to the evidence was' properly overruled, and it was not error for the court to reject evidence of the actual value of the land.

Objections to the instructions have been sufficiently considered in what we have said. On the whole, we find the instructions placed a heavier burden on plaintiff than he was compelled by the law of the case to bear, but they are free from error prejudicial to defendant. As far as defendant is concerned, the case was fairly tried and, manifestly, the judgment is for the right party. Accordingly, it is affirmed. All concur.