**URSETH v. SUN LIFE ASSUR. CO. OF CANADA.**

**No. 11854.**

Circuit Court of Appeals, Eighth Circuit.
April 26, 1941.

Rehearing Denied May 16, 1941.

530

J. L. London, of St. Louis, Mo. (Leahy, Walther & Hecker, of St. Louis, Mo., on the brief), for appellant.

James E. Garstang, of St. Louis, Mo. (Davis Biggs, Jr., Emmet T. Carter, and Carter & Small, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

In a suit by the beneficiary on a life insurance policy, the trial court directed a verdict in favor of the insurance company, on the ground that the evidence conclusively showed that the initial premium had not been paid, nor had credit been extended with respect to it, and hence the policy had never become effective. Plaintiff contends that there was sufficient evidence of an unconditional delivery of the policy to the insured, and of a waiver of premium prepayment, so that, under the law of Missouri, the court could not properly have directed a verdict for defendant.

At the time he made application for the policy, O. A. Urseth, the insured, was a soliciting agent for defendant, authorized to take applications, to deliver the policies issued by the company upon such applications, and to collect the initial premiums thereon. His contract as agent was dated January 28, 1936. It was cancelled on March 23, 1936, because he had failed to produce any business, except his own application. Under the contract, he was to receive a commission allowance on the business written by him, but, since he claimed to be without funds, the company made three cash advances to him of $25 each, on the 4th, 12th and 18th of Febru-

ary, or a total of $75, which it charged against him on its books. During this period he submitted an application in his own name, with his wife as beneficiary, for a five-year term policy, in the amount of $5,-000, with a $15.05 quarterly premium. The application bears date of February 15, 1936, but the medical examiner's report is dated February 11, 1936, and the policy itself was executed at the home office in Montreal, Canada, on February 20, 1936.

The policy was transmitted to the branch office of the company at St. Louis, Missouri, and on February 24, 1936, was either handed to Urseth at the office or left in his agent's box. The evidence shows that a memorandum of instructions was placed with it, as follows:

"Memorandum from St. Louis, Missouri.

"To Mr. Urseth

"Re: Your Policy 1493–954.

"Enclosed is the above mentioned policy which is to be delivered subject to the following conditions:

"(1) If the policy is written as applied for:

"(a) Where a settlement in accordance with the Company's regulations (cash in full or part cash and agreement on Company's form for balance) has already been arranged the policy may be immediately delivered.

"(b) Where a settlement has not already been arranged, provided the applicant is still in good health and other conditions in the application have not changed, settlement must be effected within two months from the date of the medical examination, or of the non-medical personal declaration in non-medical cases; otherwise the policy must be returned to this office for cancellation.

"(2) If the policy is written on terms other than applied for:

"(a) Where a settlement has already been arranged, this office must be notified at the earliest possible moment (not later than one month from this date) that the policy has or has not been accepted and any necessary settlement adjustment made. The policy must be returned for cancellation if not accepted within that time.

"(b) Where a settlement has not already been arranged the provisions of (1) (b) above apply, subject to such forms of acceptance as may be required.

"If no settlement is arranged and the applicant wishes to hold the policy for inspection the slip at the foot of this form must be completed and returned to this office.

"If settlement is made by part cash and an agreement to pay the balance and if the agreement is not met at maturity the policy must be returned to this office for cancellation.

"This policy is written as follows:

"O. K. * * *

"Encl. Policy Yes

"Receipt Nil

"L. S. Miller

Branch-Secretary

"per Sa."

.........................................

"Acknowledgment of Receipt of Policy for Inspection

—— 19 ——

"Received from —— Agent of the Sun Life Assurance Company of Canada, Policy No. —— written by said Company upon my life.

"Said policy is delivered to me and received by me for inspection only, and I hereby agree that said Company shall incur no liability thereunder unless the first premium thereon shall have been paid in full to, and accepted by, the Company during my lifetime and good health, and I further agree to return said policy to the Company upon demand by it at any time prior to the acceptance by it of said premium.

"(Applicant)"

The application, copy of which was attached to the policy, contained an agreement, over Urseth's signature, "that said policy shall not take effect until the first premium has been paid during my life and good health." The policy contained the following similar provision: "This policy shall not take effect until the first premium shall have been actually paid during the life and good health of the assured."

When the company stopped making cash advances to him, Urseth apparently ceased going to the office, and cancellation of his contract as agent was accordingly made by letter addressed to him at his residence in St. Louis. He had never paid the premium on his policy, nor did he ever execute the inspection receipt attached to the memorandum of instructions given him with the policy. The records of the St. Louis of-

fice showed that on April 13, 1936, it mailed him the following form letter, which was regularly sent every applicant who failed to accept a policy within 60 days from the date of the medical examination:

"The time allowed by the Company for your acceptance of this policy has expired, but before we report this fact to our Head Office we would like to give you an opportunity to reconsider your decision.

"In your own case, if you act now, a declaration of continued good health satisfactory to the Company, and an arrangement for the payment of the premium are the only requirements to put this policy in force.

"Will you please let us hear from you if you are at all interested."

Urseth was killed April 15, 1936, in an automobile accident.

Plaintiff's first contention is that the delivery of the policy to Urseth, without payment of the initial premium on his part, constituted, under the law of Missouri, an automatic extension of credit and a waiver of premium prepayment, as a matter of law, or that it at least was such evidence of a credit extension as entitled her to have that question submitted to the jury. National City Bank v. Missouri State Life Insurance Co., 332 Mo. 182, 57 S.W.2d 1066, 1070, is cited in support of this contention. That case held in substance that where the insurer's agent was authorized to deliver a policy and make collection of the premium, his delivery thereof to the insured, without requiring the premium to be paid, would constitute a waiver of the prompt payment of the premium, and the policy would be treated as having become effective from the date of its delivery. The opinion says: "Numerous Missouri cases, in which the defense was that the first premium was not paid upon delivery of the policy, rule that such payment may be deemed to have been waived by the agent of the insurer, authorized . to deliver the policy and to collect the premium. * * * These decisions rest upon the principle of estoppel."

Reliance also is placed upon Lafferty v. Kansas City Casualty Co., 287 Mo. 555, 229 S.W. 750, where it was held: "In an action to recover upon an accident policy for the death of the insured, the insured's possession of the policy raises the presumption that it had been delivered and paid for, or that credit had been given for the premium; and, where defendant's testimony was otherwise, the question was for the jury." The court thus applied to an insurance case the rule previously adopted in res ipsa loquitur cases, under Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S.W. 907, 43 L.R.A. 505, and took the view that the presumption arising from possession of the policy created such a prima facie case in favor of plaintiff that even uncontradicted testimony on positive facts could not destroy its probative force, and that "even though hundreds of the most reputable witnesses of the community should testify to the facts * * * the jury alone must be the judge of their credibility and the weight to be given to their testimony, and * * * the court has absolutely no legal authority to interfere with that absolute prerogative of the jury."

The Lafferty case has been cited with approval in other Missouri decisions, among them Bennett v. Royal Union Mutual Life Insurance Co., 232 Mo.App. 1027, 112 S. W.2d 134. The opinion in the latter case expressly indicates that the term prima facie case in such a situation is intended to be synonymous with a submissible case. In other decisions, attempts have been made to distinguish between a prima facie case based on the production of at least some affirmative evidence and one resting wholly on presumption. In Berne v. Prudential Insurance Co., Mo.App.1939, 129 S. W.2d 92, 95, it was declared that the general rule, that where the plaintiff has made out a prima facie case the trial court cannot direct a verdict for the defendant is subject to the exception that, where the proof is documentary or the defendant relies on plaintiff's own evidence, or evidence which the plaintiff admits to be true, and the reasonable inferences therefrom all point one way, or where plaintiff's prima facie case is based upon a presumption, there is no issue of fact to be submitted to the jury. The opinion says: "The general rule announced in the Gannon case [Gannon v. Laclede Gaslight Co., supra] * * * has been held by our Supreme Court to be subject to a further exception where plaintiff's prima facie case is based upon a presumption. State ex rel. Bowdon v. Allen et al., 337 Mo. 260, 85 S.W.2d 63." The Bowdon case, which involved an issue as to suicide, seeks to distinguish between a "legal presumption affecting the burden of proof" and one relating only to "the burden of evidence," and holds that "the presumption against suicide which arose

\* \* \* in the plaintiff's favor affected only the burden of evidence." [337 Mo. 260, 85 S.W.2d 67.]

The Lafferty case, however, declares that the non-delivery of a policy is an affirmative defense, on which defendant has the burden of proof, and holds in effect that the jury alone has the right to determine whether defendant's proof is sufficient to sustain the burden resting upon it and to overcome the prima facie case of plaintiff. The difference in the language used in the two cases and the lack of any reference to the Lafferty case in the Bowdon opinion may leave a doubt as to whether the rule declared with respect to the presumption against suicide was intended to have application also to the presumption as to policy delivery and extension of premium credit, and a more definite expression on the part of the Supreme Court of Missouri will perhaps be necessary to settle the question.

■ It is unnecessary for us here, however, to attempt to clear up the confusion in the Missouri decisions, by a consideration of the seeming soundness or unsoundness of their conflicting expressions. Even if the rule recognized in the Bowdon case is not intended to have application to a presumption as to policy delivery and extension of premium credit, this would not entitle plaintiff to a reversal of the judgment in this case. The rule in the Lafferty case clearly does not apply except within the immediate boundaries of an insurer and insured relationship. It rests upon the obvious premise that delivery of the policy could only have been made to the insured in that status or capacity. It is somewhat analogous to the situation where a debtor has obtained possession of the papers which evidence his obligation. His possession creates a presumption of payment, because, as the Supreme Court of Missouri has said, in Erhart v. Dietrich, 118 Mo. 418, 24 S. W. 188, 191, "it accords with the ordinary course of dealing that, when one pays his note or bond, or other security, he usually takes it up." "But," the court adds, "when the debtor had the means of obtaining possession of, or of canceling, the obligation, other than by paying it, then no such presumption arises."

■ In the present case, the policy came into Urseth's hands as an agent of the company, and not as one of its insured. Plaintiff argues that, where the agent is the applicant for the insurance, a delivery to the agent ought to be held to be a delivery to the insured. But such an indistinguishability does not follow, where, as here, an obligation was imposed upon him as agent, in connection with the receipt of the policy, which the company had a right to require of him, and which it was his duty under his agent's contract to perform. Under the memorandum of instructions placed with the policy when it came into his hands, Urseth as agent could not legally release the policy to himself, so as to enable it to become effective, until the initial premium was paid. Whatever might be the necessity and justice of creating an estoppel against the company, where an agent has placed a policy in the hands of a third-party insured, in violation of his instructions, the wrongful acts of an agent certainly do not compel an estoppel against the company in favor of himself. The law will not permit an agent to profit from his own fraud against his principal. Clinkscales v. Clark, 137 Mo.App. 12, 118 S.W. 1182.

■ Plaintiff argues that it was a question for the jury whether the memorandum of instructions was in fact placed with the policy at the time, since none was included with it when Urseth later handed it to plaintiff. The positive testimony of defendant's witnesses, however, in connection with the established practice in such cases, and the carbon copy of the memorandum contained in defendant's file, could leave no rational doubt on that point for a jury to settle. Ephemeral speculation does not afford substance for a jury issue.

■■ It is suggested also that the fact that the memorandum was addressed, "To Mr. Urseth. Re: Your Policy 1493–954," was evidence to indicate that the policy was delivered to Urseth as an insured and not as an agent. The contents of the memorandum and the fact that, if Urseth were being dealt with as an insured, the instructions were superfluous make this too a mere wishful assertion. The same is true of the declaration that the jury might find the expression "O. K." on the memorandum to be an indication that the policy was to be delivered without prepayment of the premium. The testimony of defendant's witnesses shows that this expression had reference to a special commission allowance, which was stricken out on the memorandum immediately following the expression itself. But, in any event, such an abstract expression,

534

without some apparent correlation, would constitute an immateriality which could not be translated into a plenary ambiguity for convenient jury resolution.

It is argued that the fact that the company did not specifically demand that Urseth return the inspection receipt duly executed, or make a special request for payment of the premium, is evidence of its intention to extend credit. But these were matters duly covered by the memorandum of instructions, and as to which the responsibility was cast solely upon Urseth. Neither he nor his beneficiary can mould his own dereliction into a weapon against the company.

The contention is made that if the company was willing to make some cash advances to Urseth, as it did, it may be assumed that it also was willing to extend credit for his premium. But this again is mere argument. The evidence shows conclusively that credit for a policy premium was never extended to an agent, except where he had renewal commissions accruing, and then only on his signed written order. Urseth never had any renewal commissions coming to him, nor is there any evidence that he had ever requested that he be extended credit for the premium. On the contrary, plaintiff offered evidence, on rebuttal, to show that Urseth had stated that "he would pay for it out of his salary." This he never did, possibly because his advances were terminated. The company never charged the premium against him on its records. The initial premium not having been paid within 60 days from the date of his medical examination, and Urseth not being in a position as agent to deliver the policy to himself as an insured so as to create an estoppel against the company, the policy never became effective.

Plaintiff's final contention is that, under the recitation in the policy, defendant was precluded from showing that the premium was unpaid. The policy contained the following clause: "This policy is issued in consideration of the application therefor and of a premium of Fifteen $^{05}/_{100}$ Dollars to be paid to the Company on the fifteenth day of February, 1936, and of the payment to it of a like amount quarter-yearly thereafter on the fifteenth day of May, August, November and February in every year during the continuance of this policy until five full years' premiums shall have been paid." It contained a further provision that "The words 'date of issue' as used herein shall be construed to mean the date on which this policy was signed and sealed at Montreal." There was a recitation that the policy was "Signed and Sealed at Montreal, this twentieth day of February one thousand nine hundred and thirty-six." Plaintiff argues that the issuance of the policy on February 20th, when the first premium was to be paid on February 15th, was "an irrefutable admission that the premium was paid." In Missouri State Life Insurance Co. v. Salisbury, 279 Mo. 40, 213 S. W. 786, it was said: "The payment of the first premium, where the policy itself recites that such first premium was made, cannot be disputed for the purpose of invalidating the policy; but where the recital is that 'the insurance is granted in consideration of the payment in advance' of a named sum of money, 'being the premium for the first year's insurance under this policy,' the recital is not a specific recital of payment, but a mere statement that the first payment shall be the consideration for the issuance of the policy." Here, as in the Salisbury case, the "recital is not a specific acknowledgment of payment; it merely states that the first payment shall be as consideration for the issuance of the policy." Hence, even if plaintiff had been in a position to invoke the provisions of the policy, this contention would be without merit.

The trial court properly held that the evidence conclusively established that the initial premium had not been paid, nor had credit been extended with respect to it. Urseth could not in this situation deliver the policy, which came into his hands as agent, to himself as insured, so as to create a liability upon it against the company. The policy under these circumstances never became effective, and the judgment for defendant must be affirmed.